*703 OPINION OF THE COURT
Richard M. Platkin, J.
Defendant Barbera Homes, Inc. moves for summary judgment seeking dismissal of the claims brought by plaintiffs Carmine and Alison Pesca. Plaintiffs oppose the motion and cross-move for summary judgment.
Background
On or about February 20, 2007, plaintiffs entered into an agreement with Barbera Homes (the agreement) to purchase a newly constructed home for the price of $350,000. The subject home had been constructed with “exterior rough grading” in place. However, homes had not yet been constructed upon the adjacent lots.
The agreement expressly excludes any builder’s warranties, except for the express limited warranties annexed to, and incorporated as part of, the agreement. The agreement further acknowledged that plaintiffs had received a copy of the New Home Limited Warranty and the 2-10 Home Buyer’s Warranty Booklet Limited Warranty Coverage 10-Year Structural Only (collectively the limited home warranties) prior to execution. The limited home warranties cover, among other things: (a) defective workmanship; (b) defective materials; and (c) defective design, provided by design professionals engaged by Barbera ' Homes. “Workmanship, materials, and design will be considered to be defective if they fail to meet or exceed the relevant standards and specifications of the New York State Uniform Fire Prevention and Building Code or if they fail to meet the local building code standards.” However, the limited warranties set forth a number of exclusions from coverage, including defects in outbuildings, driveways, retaining walls and landscaping.
On or about March 23, 2007, plaintiffs began complaining to Barbera Homes about “standing water in the backyard,” along with “water flowing into the garage and driveway” and failure of the site to “drain properly.” Plaintiffs informed Barbera Homes that they did not want to close on the purchase unless those issues were addressed.
Between March 23, 2007 and the scheduled closing date of June 15, 2007, numerous e-mails and other communications were exchanged concerning a “grading plan” that was intended to address plaintiffs’ concerns. However, this plan was not implemented prior to closing. According to plaintiffs, however, Barbera Homes assured them that “all issues regarding grading *704 and drainage” would be taken care of after closing. Based on this assurance, plaintiffs proceeded to close.
Post-closing communications between the parties continued, with plaintiffs continuing to insist that Barbera Homes resolve the issues with grading and standing water. While believing that “all of the defects alleged by Plaintiffs were outside the scope of the Limited Home Warranties,” Barbera Homes maintains that it nonetheless continued to attempt to address plaintiffs’ concerns by, among other things, developing a “comprehensive grading plan,” installing a rear yard drain, and taking other measures designed to alleviate plaintiffs’ drainage problems. Plaintiffs disagree, asserting that Barbera Homes’s actions in “throwing and raking out small amounts of dirt . . . and placing a small amount of sod next to the retaining wall” did not address or resolve their concerns. Accordingly, communications between the parties continued, with Barbera Homes apparently acknowledging in January 2008 that it “must comply with the requirement of the building code that the slope of the grade between [plaintiffs’] home and the adjacent property be no greater than a one foot over three foot pitch.” Further communications ensued, with Barbera Homes claiming that it continued to work on a grading plan. On May 22, 2008, Barbera Homes informed plaintiffs that a grading plan was completed and being mailed out to them that afternoon. Fearing the expiration of the statute of limitations, plaintiffs commenced this action in June 2008, but the parties continued informal efforts to resolve their issues. Ultimately, these efforts proved unsuccessful.
In their amended complaint, plaintiffs allege that the defects in the grading of their property arose from defendant’s unilateral decision to deviate from the final plans approved by the municipality and from its own proposed plot plan. Plaintiffs further maintain that such deviations caused their property to fall out of compliance with applicable state and local codes and regulations. In addition, plaintiffs allege that defendant made fraudulent representations to them in order to, inter alia, induce them to close on the transaction. Pretrial discovery is complete, and the instant motion practice ensued.
Analysis
Summary judgment is a drastic remedy and should only be granted if there are no material issues of disputed fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). In evaluating a motion for summary judgment, a court should *705 simply determine whether material issues of disputed fact preclude the grant of judgment as a matter of law (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338 [1974]). The party moving for summary judgment has the initial burden of coming forward with admissible evidence to support the motion, so as to warrant the court directing judgment in movant’s favor; the burden then shifts to the opposing party to demonstrate, by admissible evidence, the existence of any factual issue requiring a trial of the action (see Zuckerman v City of New York, 49 NY2d 557 [1980]).
A. Negligence (1st, 2nd and 3rd Causes of Action)
Barbera Homes moves to dismiss plaintiffs’ negligence claims based upon the absence of a legal duty independent of the parties’ contractual relationship.
“It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated . . . This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract” (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987]).
“[M]erely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort” (Sommer v Federal Signal Corp., 79 NY2d 540, 551 [1992]). In separating tort from contract claims, courts have looked to the nature of the relationship between the parties, as well as “the nature of the injury, the manner in which the injury occurred and the resulting harm” (id. at 552).
Applying these principles, it is clear that plaintiffs’ negligence claims cannot be maintained. Plaintiffs have failed to demonstrate that Barbera Homes owed them legal duties independent of the written agreements prescribing the parties’ respective obligations. Further, plaintiffs’ claimed economic losses allegedly occurred due to “defendant’s failure to exercise due care in its performance of the contract,” rather than “because of an ‘abrupt, cataclysmic occurrence’ ” (Gallup v Summerset Homes, LLC, 82 AD3d 1658 [4th Dept 2011], quoting Sommer at 552). And while a duty in tort “may be imposed by law as an incident to the parties’ relationship” (Sommer at 551), defendant’s role as a general contractor and vendor of real property is not the type of relationship that gives rise to such a duty (see *706 e.g. Feinman v Parker, 252 AD2d 869, 870 [3d Dept 1998]). Accordingly, plaintiffs’ first, second and third causes of action are dismissed.
B. Breach of Express Contract (6th Cause of Action)
In their sixth cause of action, plaintiffs allege that Barbera Homes failed to comply with express provisions of the contract requiring, inter alia, compliance with all relevant laws and regulations. Barbera Homes moves to dismiss this cause of action as barred by the limited home warranties and the merger doctrine.
“[W]here a limited warranty expressly excludes any common-law implied warranty, it is exclusive and a cause of action sounding in common-law breach of contract may not be maintained” (Lantzy v Advantage Bldrs., Inc., 60 AD3d 1254, 1255 [3d Dept 2009]). “A breach of contract cause of action, however, is precluded only to the extent it is based on the breach of warranty” (Gallup at 1661), and a claim may be maintained alleging specific violations of the purchase contract (Tiffany at Westbury Condominium v Marelli Dev. Corp., 40 AD3d 1073, 1075-1076 [2d Dept 2007]). As plaintiffs have alleged the breach of a specific contractual provision requiring Barbera Homes to comply with all relevant laws and regulations in undertaking and completing the contracted work, the availability or assertion of a similar warranty claim does not compel dismissal of this cause of action.
However, “[u]nder the well-established doctrine of merger, provisions in a contract for the sale of real estate merge into the deed and are thereby extinguished absent the parties’ demonstrated intent that a provision shall survive transfer of title” (Hunt v Kojac, 245 AD2d 858, 858-859 [3d Dept 1997]). Here, the plain language of the contract clearly and unambiguously expresses the parties’ intention that “the terms of this contract shall not survive the closing of title but rather shall be merged by delivery of the deed by [defendant]” (see Arnold v Wilkins, 61 AD3d 1236 [3d Dept 2009]; cf. Cerand v Burstein, 72 AD3d 1262 [3d Dept 2010]). Accordingly, it is clear that the parties intended the limited home warranties to constitute plaintiffs’ exclusive remedy for post-closing defects in the contracted work. Moreover, while collateral undertakings fall outside the merger doctrine (Hunt at 859), the contractual provisions relied upon by plaintiffs are by no means collateral to the transaction (see Cerand, supra [zoning code violations existing at time of clos *707 ing]; CGM Constr. v Miller, 263 AD2d 831 [3d Dept 1999] [extra work claim on construction contract]).[1]
Accordingly, plaintiffs’ sixth cause of action for breach of the agreement is dismissed.
C. Breach of Statutory Warranty (4th Cause of Action)
Plaintiffs’ fourth cause of action alleges that Barbera Homes breached a duty owed to them under the housing merchant implied warranty established in General Business Law § 777-a. Defendant seeks dismissal of this claim on the ground that the limited home warranties are plaintiffs’ exclusive remedy.
Pursuant to General Business Law § 777-a (1), “a housing merchant implied warranty is implied in the contract or agreement for the sale of a new home and shall survive the passing of title.” However, a builder or seller of a new home may exclude or modify this or any other warranty under prescribed terms and conditions. Warranties other than the housing merchant implied warranty may be excluded or modified “by any clear and conspicuous terms contained in the written contract or agreement of sale which call the buyer’s attention to the exclusion or modification of warranties and make the exclusion or modification plain” (id. § 777-b [1]). The housing merchant implied warranty may be excluded or modified by the builder or seller only if the buyer is offered a limited warranty in accordance with the provisions of subdivisions (3) through (5) of General Business Law § 777-b (id. [3]). Barbera Homes submits proof that the contract excluded all implied and express warranties by conspicuously stating so and by providing plaintiffs with the limited home warranties, which also conspicuously excluded all other express or implied warranties.
In arguing that they are nonetheless entitled to the housing merchant implied warranty, plaintiffs maintain that they were not offered a limited warranty that complies with the provisions of General Business Law § 777-b (4) (e), which requires the builder’s limited warranty to provide “clear and conspicuous identification of any parts or portions of the home or premises that are excepted or excluded from warranty coverage, and the standards that will be used to determine whether a defect has occurred.” The cited paragraph further provides that
*708 “any exception, exclusion or standard which does not meet or exceed a relevant specific standard of the applicable building code, or in the absence of such relevant specific standard a locally accepted building practice, shall be void as contrary to public policy and shall be deemed to establish the applicable building code standard or locally accepted building practice as the warranty standard” (General Business Law § 777-b [4] [e] [i]).
The limited home warranties provided by defendant exclude defects in outbuildings, including driveways, retaining walls and landscaping, and there is no claim that this exclusion was stated in anything other than a clear and conspicuous manner. Rather, it is plaintiffs’ contention that this exclusion is invalid insofar as it purports to excuse defendant’s alleged noncompliance with building codes and locally accepted building practices with respect to the grading of the property, the draining of surface waters and the use and construction of retaining walls. Plaintiffs argue that since they have not been provided a limited warranty that complies with the provisions of General Business Law § 777-b, Barbera Home’s purported exclusion of the housing merchant implied warranty is invalid.
In any case involving a question of statutory interpretation, it is the duty of the court to “discern and give effect to the Legislature’s intent” (Matter of Ramroop v Flexo-Craft Print., Inc., 11 NY3d 160, 166 [2008]). “As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof’ (Majewski v BroadalbinPerth Cent. School Dist., 91 NY2d 577, 583 [1998]). “[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Pultz v Economakis, 10 NY3d 542, 547 [2008] [internal quotation marks omitted]).
The “housing merchant implied warranty may be excluded or modified by the builder . . . only if the buyer is offered a limited warranty in accordance with” certain prescribed requirements (General Business Law § 777-b [3]). The requirements speak to the manner in which the terms of the limited warranty are disclosed to the purchaser, what the builder will do when defects arise, the terms of the warranty, the claims procedure to be followed, and any limitations or exclusions of consequential, incidental or total damages (id. [3]-[4]). Thus, General Business Law § 777-b (4) provides that a “limited warranty sufficient to *709 exclude or modify a housing merchant implied warranty must be written in plain English and must clearly disclose” certain things. Among the necessary disclosures is “the clear and conspicuous identification of any parts or portions of the home or premises that are excepted or excluded from warranty coverage, and the standards that will he used to determine whether a defect has occurred” (id. [4] [e]).
In claiming that the limited home warranties do not meet the statutory requirements, plaintiffs rely upon the provision found in General Business Law § 777-b (4) (e) (i), which requires any exception, exclusion or standard to meet or exceed a relevant specific standard of the applicable building code or locally accepted building practice. But the plain and unambiguous text of this proviso makes it clear that a builder-provided limited warranty is not denied force and effect merely because it contains an exclusion that falls short of meeting applicable building standards. Rather, the State Legislature has chosen to prescribe a different remedy: any such exclusion “shall be void as contrary to public policy and shall be deemed to establish the applicable building code standard or locally accepted building practice as the warranty standard” (General Business Law § 777-b [4] [e] [i]). Thus, the builder’s limited warranty is given effect, but the exclusion is deemed modified to the extent necessary to reflect the applicable minimum standard.
Thus, even if the limited home warranties fall short of standards established by the applicable building codes and locally accepted building practices with respect to the grading of the property, the draining of surface waters and the use of retaining walls, such warranties, and not the housing merchant implied warranty, govern and are controlling. Accordingly, plaintiffs’ fourth cause of action alleging that Barbera Homes breached a duty owed to them under the housing merchant implied warranty established in General Business Law § 777-a must be dismissed.
D. Violation of General Business Law Article 36-b (5th Cause of Action)
Plaintiffs’ fifth cause of action alleges that defendant violated the terms of General Business Law §§ 777, 777-a and 777-b by failing to respond to their numerous written and oral complaints concerning the grading of the property. As General Business Law § 777 merely defines certain terms used in article 36-b, there can be no independent cause of action for violation thereof. Further, for the reasons stated previously, plaintiffs are *710 not entitled to the housing merchant implied warranty of General Business Law § 111-a, and to the extent that plaintiffs allege that the limited home warranties provided by defendant run afoul of General Business Law § 777-b (4) (e) (i), such a claim is part and parcel of a claim for violation of the warranties. Accordingly, this cause of action is dismissed.
E. Loss of Use of Backyard (7th Cause of Action)
Plaintiffs’ seventh cause of action alleges that as a direct and proximate result of defendant’s actions, they have lost the use of their backyard, thereby sustaining damages in the amount of $50,000. As this cause of action sets forth a claim for damages without stating an underlying cause of action, it is not cognizable and must be dismissed as a matter of law.
F. Fraud (8th Cause of Action)
For their eighth cause of action, plaintiffs allege they were induced to close on the property due to defendant’s fraudulent misrepresentations. Defendant argues that this cause of action is duplicative of plaintiffs’ contract and warranty claims and, in any event, plaintiffs are unable to demonstrate the elements of scienter and justifiable reliance.
In order to state a cause of action for fraud, plaintiffs must allege a misrepresentation or concealment of a material fact, falsity, scienter, justifiable reliance on the deception, and resulting injury (Lusins v Cohen, 49 AD3d 1015, 1017 [3d Dept 2008]). “A cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract” (Tiffany, 40 AD3d at 1076; Kosowsky v Willard Mtn., Inc., 90 AD3d 1127, 1129 [3d Dept 2011] [“a misrepresentation premised directly on the same actions giving rise to a breach of contract does not give rise to a separate cause of action for fraud”]).
The court concludes that the fraud claim must be dismissed to the extent that it is based upon allegations that Barbera Homes would remedy plaintiffs’ concerns with the grading of their lot prior to closing. These alleged misrepresentations arose out of and pertain to the performance of the contract and the contractual obligation of Barbera Homes to complete the work in compliance with all relevant laws and regulations. Moreover, plaintiffs are unable to demonstrate the element of justifiable reliance, as plaintiffs knew that the grading work that was the subject of the alleged representations had not been completed at the time of closing.
However, the court concludes that plaintiffs’ allegation that defendant and its agents continually assured them that a *711 comprehensive grading plan would be implemented after the closing to address plaintiffs’ concerns (amended complaint 1Í 58) is not duplicative of the contract and warranty claims. “[W]here, as here, plaintiffs’ allegations of intentional fraud, though ‘parallel in many respects to the breach of contract claim,’ include claims of fraudulent misrepresentations made by defendants which induced them to . . . close on the property, they are not ‘merely redundant’ of the breach of contract claim” (Gizzi v Hall, 300 AD2d 879, 880 [3d Dept 2002] [citations omitted]).
As to the merits of this allegation, defendant argues that there is no proof that Barbera Homes had anything other than a genuine belief that the grading would be satisfactorily completed. In his moving affidavit, Frank A. Barbera, vice-president of the defendant corporation, avers that while the final grade of plaintiffs’ property was not completed prior to closing, this delay was the result of weather conditions. Mr. Barbera further relies upon plaintiffs’ acknowledgment that Barbera Homes did come forward with a comprehensive grading plan, the additional site work performed by Barbera Homes in November 2007 to address plaintiffs’ concerns, and plaintiffs’ refusal to allow defendant to implement additional remedial measures.
The court concludes that the foregoing is sufficient to make a prima facie demonstration of the absence of scienter. In opposition, plaintiffs have failed to come forward with proof in admissible form raising a triable issue of fact. Accordingly, the branch of the fraud claim founded upon defendant’s representations regarding the post-closing implementation of a comprehensive grading plan must be rejected.
Finally, plaintiffs’ remaining allegations of fraud are premised upon defendant’s alleged failure to disclose certain deviations from the master plan filed for the subdivision in which the property is located. As there is no claim (or proof) of active concealment, these claims are barred by the doctrine of caveat emptor (Gizzi, 300 AD2d at 881). Moreover, the public records that plaintiffs relied upon in formulating this cause of action were available to them prior to closing; as such, they are unable to demonstrate justifiable reliance (Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1056 [3d Dept 2009]).
G. Mitigation of Damages
Defendant further argues that it is entitled to dismissal of the complaint due to plaintiffs’ failure to mitigate their dam *712 ages. In particular, defendant complains that plaintiffs have rejected any and all remedies proposed by Barbera Homes and retained a consultant who proposes remedial efforts that are excessive.[2] While the issues raised by defendant are not without force, the court concludes that defendant has failed to affirmatively demonstrate as a matter of law that plaintiffs’ claims are foreclosed entirely by any failure to mitigate damages.[3]
H. Breach of Limited Home Warranties
In opposing defendant’s motion for summary judgment and cross-moving for judgment in their favor, plaintiffs argue that Barbera Homes failed to comply with the limited home warranties. Defendant objects to consideration of this unpleaded theory of liability and, in any event, argues that such a claim is foreclosed by plaintiffs’ failure to file a claim in accordance with the terms of the limited home warranties and by the exclusions set forth in such warranties.
While disfavored, a plaintiff may oppose a motion for summary judgment on the basis of an unpleaded cause of action that is supported by the record (Comsewogue Union Free School Dist. v Allied-Trent Roofing Sys., Inc., 15 AD3d 523, 524 [2d Dept 2005]). Indeed, if the opposing party has not been misled to its prejudice, a court may go so far as to grant plaintiff summary judgment on an unpleaded cause of action (Stiber v Cotrone, 153 AD2d 1006, 1006 [3d Dept 1989]).
Here, defendant has neither alleged nor demonstrated prejudice or surprise resulting from plaintiffs’ belated reliance on the limited home warranties. Indeed, defendant’s motion is premised largely upon its contention that the limited home warranties constitute plaintiffs’ exclusive remedies, and the availability of such a theory is or should have been apparent from plaintiffs’ original complaint, filed back in June 2008.
Further, the court is not persuaded by defendant’s contentions regarding the lack of merit of such a claim. While timely notice is a condition precedent to initiation of a warranty claim, defendant acknowledges that it had actual and timely notice of plaintiffs’ complaints of alleged defects concerning the grading and draining and it examined such complaints under the warranties (Barbera affidavit ¶¶ 23-24). Accordingly, any *713 technical noncompliance with the claim procedures of the warranties should be excused (see Whitmyer Bros. v State of New York, 63 AD2d 103 [3d Dept 1978], affd 47 NY2d 960 [1979]). And for the reasons stated above, plaintiffs have a viable claim that the exclusions of the limited home warranties are invalid and of no force or effect insofar as they fall short of standards established by the applicable building codes and locally accepted building practices with respect to the grading of the property and the draining of surface waters. Under the circumstances, Barbera Homes has failed to demonstrate its entitlement to dismissal of the complaint. However, the court does not believe that it would be an appropriate exercise of discretion to entertain the merits of plaintiffs’ untimely cross motion for summary judgment on an unpleaded cause of action.
It is therefore ordered that the eight causes of action set forth in plaintiffs’ complaint are dismissed for the reasons stated above; and it is further ordered that the parties shall appear for a conference to be held in the chambers of the undersigned (room 256 of the Albany County Courthouse) on March 23, 2012 at 9:30 a.m. to discuss, among other things: (a) the procedural issues attendant to this action, including the need for any additional motion practice; (b) the viability of the April 23, 2012 day certain for trial; and (c) settlement of this action. Counsel shall confer among themselves regarding these issues prior to the conference, and clients shall be present at the conference.

. Indeed, the Court of Appeals decision in Caceci v Di Cardo Constr. Corp. (72 NY2d 52 [1988]) to imply a common-law remedy that survives the closing of title arose precisely because the merger doctrine generally has the effect of extinguishing breach of contract claims based upon defective home construction (see Gorsky v Triou’s Custom Homes, 194 Misc 2d 736 [Sup Ct, Wayne County 2002]).

. In this connection, defendant notes that plaintiffs now claim more than $700,000 in damages to correct defects associated with a home purchased for $350,000.

. Alternatively, to the extent that defendant met its initial burden, questions of fact preclude the grant of summary judgment on this ground.